UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/2015
```

-------------------------------------------------------------X

BENJAMIN MESSINGER,         :

                               :

                  Plaintiff,   :

                               :         1:13-cv-2444-GHW

        -against-         :

                               :     MEMORANDUM OPINION

JP MORGAN CHASE BANK, N.A.,    :          AND ORDER

                               :

                  Defendant.  :

-------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

       Plaintiff Benjamin Messinger, through counsel, brought this diversity action against

Defendant JPMorgan Chase Bank, N.A. ("Chase"), alleging that Chase discriminated against him

based on his age and retaliated against him for complaining of age discrimination, in violation of the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.  Chase now moves

for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons,

Chase's motion is granted.

## I.    Background[1]

       Messinger was a Consumer Banking Personal Banker at Chase's Cedarhurst, New York

branch (the "Cedarhurst branch") from May 4, 2009 to August 1, 2012.  Dkt. No. 66 (Declaration of

Walker G. Harman, Jr.) ("Harman Decl."), Ex. B (Messinger Deposition Transcript) ("Messinger

---

[1] In accordance with the applicable summary judgment standards, the following facts are derived from the documentary exhibits in the record relied on by Messinger, and from the undisputed portions of those exhibits relied on by Chase.  In response to numerous statements of fact set forth in Chase's Local Civil Rule 56.1 Statement of Material Facts, Messinger asserts that he "lacks knowledge sufficient to admit or deny" the statement.  *See generally* Dkt. No. 68 (Messinger's Rule 56.1 Counterstatement of Material Facts).  To the extent these statements are supported by the evidence in the record, they are deemed admitted.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) ("A party's statement that it can neither admit nor deny [an adversary's] statement based upon the factual record is not a sufficient response to establish a disputed fact . . . ." (internal quotation marks omitted)); *see also Allen v. City of New York*, 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007) ("The Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement; it also must be satisfied that the moving party's assertions are supported by the record.").

Dep.") at 25-26.  At the end of his tenure with Chase, Messinger was 52 years old.  Harman Decl., Ex. A (Messinger Affidavit) ("Messinger Aff.") at ¶ 1.  All of the other bankers at the Cedarhurst branch were in their late 20's or early 30's.  *Id.* ¶ 32.

Beginning on February 15, 2012, Lonny Rothman was the Branch Manager of the Cedarhurst branch and Messinger's direct supervisor.  Harman Decl., Ex. C (Rothman Deposition Transcript) ("Rothman Dep.") at 92-93.  According to Messinger, Rothman treated the younger Personal Bankers at the branch more favorably than Messinger.  Specifically, Messinger asserts that Rothman (1) wrongfully denied him product value credits ("PVCs"), a form of commission earned for facilitating certain consumer transactions, "instead giving [PVCs] to younger Personal Bankers," Messinger Aff. at ¶ 15; (2) favored younger Personal Bankers when he "ignored their lateness and other violations of company policy, frequently gave them valuable referrals, and kept them advised of scheduled events about which he did not inform [Messinger]," *id.* ¶ 12; (3) "interrupted a conversation between a customer and [Messinger] in order to divert the customer to a younger employee" on "multiple occasions," *id.* ¶ 13; (4) "regularly omitted [Messinger] from the exchange of information at the Cedarhurst branch," *id.*; and (5) told Evan Lefkowitz, a Business Banker at the Cedarhurst Branch, "not to provide [Messinger] with any information related to branch business," *id.* ¶ 16.  In April and May of 2012, Messinger separately complained about Rothman's alleged favorable treatment of younger bankers to Rothman, to Assistant Branch Manager Camilla Cox, and to District Manager Georgio Muia.  *Id.* ¶¶ 18-19, 21, 23.[2]

---

[2] According to Messinger, Cox "acknowledged Mr. Rothman's discrimination, and indicated to [Messinger] that Mr. Rothman wanted to terminate [Messinger]."  *Id.* ¶ 19.  Similarly, Messinger asserts that Rothman told Lefkowitz that Messinger was treated unfavorably because of his age.  *Id.* ¶ 20.  Chase has properly objected to these statements as inadmissible hearsay, *see* Dkt. No. 71, at 3-4, 8, and Messinger has not shown that admissible evidence as to the statements will be available at trial.  As a result, the Court cannot consider these statements in ruling on Chase's summary judgment motion.  *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (noting that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial" (citations omitted)).

With respect to the circumstances leading to Messinger's termination, from 2006 through 2012, Chase held an annual customer promotion as part of its sponsorship of the U.S. Open tennis tournament.  Dkt. No. 59 (Declaration of Aphrodite M. Carlucci) ("Carlucci Decl.") at ¶ 3.  Under the promotion, Chase Consumer Banking customers who made qualifying deposits in savings or checking accounts received a pair of tickets to the U.S. Open.  *Id.*  Customers were limited to one pair of tickets per household, and Chase employees were not eligible to participate.  *Id.* ¶¶ 4-5. Before the customer enrollment period began each year, Chase distributed to branch employees promotional documents disclosing the eligibility rules for the U.S. Open promotion.  *Id.* ¶ 6.[3]  These documents stated that Chase employees and their family members were ineligible to participate in the U.S. Open promotion, and that tickets were limited to one pair per household.  Carlucci Decl., Exs. A-B.

Chase's Consumer Banking Marketing Department generated a spreadsheet of all Chase customers who made qualifying deposits for the U.S. Open promotion in order to determine whether more than one customer per household had enrolled, in violation of the eligibility rules. Carlucci Decl. at ¶ 8.  In July 2012, Aphrodite Carlucci, a Chase Marketing Senior Manager, reviewed the spreadsheet and observed that both Messinger and his spouse, Galit Feinstein Messinger, were enrolled in the 2012 U.S. Open promotion with the same home address.  *Id.* ¶ 10.  Carlucci recognized Messinger's name as potentially referring to a Chase employee because Messinger had previously contacted her for assistance in enrolling a customer in the U.S. Open promotion.  *Id.* ¶ 11.  Carlucci also noticed from the spreadsheet that Lefkowitz had enrolled Messinger and his spouse in the promotion.  *Id.* ¶ 12.  The Marketing Department later determined that Messinger and his spouse had also enrolled in the 2011 U.S. Open promotion, but that the Department had failed

---

[3] Although Messinger denies this assertion in his Rule 56.1 Counterstatement of Material Facts, *see* Dkt. No. 68 at 3, Response No. 20, the evidence that he cites in support has no bearing on whether Chase distributed promotional documents disclosing the eligibility rules to branch employees.

3

to detect this fact at the time. *Id.* ¶ 15. Personal Banker Dovid Cohen had enrolled Messinger and

his spouse in the 2011 U.S. Open promotion. Rothman Dep. at 158-59. Messinger was the only

Chase employee who the Marketing Department identified as enrolled in the 2011 or 2012 U.S.

Open promotions. Carlucci Decl. at ¶ 16.

On or about July 12, 2012, Carlucci informed Rothman that Lefkowitz had enrolled

Messinger and his spouse in the 2012 U.S. Open promotion, and that employee enrollment in the

promotion violated Chase's Code of Conduct. *Id.* ¶ 13. Rothman subsequently contacted Chase's

Human Resources Department, which directed him to Chase's Global Security and Investigations

Department ("GSI"). Dkt. No. 58 (Rothman Declaration) ("Rothman Decl."), Ex. 5. GSI

conducted an investigation. Dkt. No. 60 (Declaration of Walter Mann) ("Mann Decl."), Ex. 1.

Based on his review of bank records, assigned GSI investigator Walter Mann determined that, on

June 1, 2012, Messinger had deposited $25,000 into both his solely-owned Chase savings account

and into a Chase savings account that he jointly owned with his spouse. *Id.* Mann further

determined that Messinger had participated in the 2011 U.S. Open promotion. *Id.*

On July 26, 2012, Mann interviewed Lefkowitz, Messinger, and the other Personal Bankers

in the Cedarhurst branch—Dovid Cohen, Elana Rose, and Scott Stone. *Id.* Lefkowitz stated that

Messinger and his spouse had approached him on June 1, 2012 and requested that he enroll them in

the U.S. Open promotion, and that Messinger had assured him that Chase employees and their

family members were eligible for the promotion. *Id.* Lefkowitz confirmed that he then enrolled

Messinger and his spouse in the promotion after they made qualifying deposits. *Id.* In his interview,

Messinger admitted that he had enrolled in both the 2011 and 2012 U.S. Open promotions, and

stated that he was unaware of the rule that Chase employees and their family members were

ineligible for the promotion.  *Id.*[4]  Messinger later testified that he was unaware of this rule because

he never reviewed either the 2011 or 2012 promotional documents for the U.S. Open promotion.

Messinger Dep. at 261, 266-67, 273-76.  Messinger's conduct nonetheless violated Chase's marketing

promotion policies, *see* Rothman Decl., Ex. 2 at 3 ("Employees are eligible for [promotions] unless

the offer indicates that employees are excluded."), as well as Chase's Code of Conduct, *see* Rothman

Decl., Ex. 4 at JPMC 244 ("You are expected to conduct the firm's business ethically and in full

compliance with both the letter and the spirit of laws and regulations, the Code, and any other

policies and procedures that may be applicable to you."), JPMC 255 ("The firm's assets should be

used only for the conduct of the firm's business, except where reasonable personal use is authorized

by the Code of other applicable policies."), JPMC 261 ("You may not engage in self-dealing or

otherwise trade upon your position with JPMorgan Chase or accept or solicit from a client or

supplier any personal benefit that is not generally available to other persons or that is made available

to you due to your position with JPMorgan Chase . . . .").

On July 30, 2012, Kai Craig, an employee in Chase's Human Resources Department,

reviewed GSI's findings regarding Messinger's participation in the 2011 and 2012 U.S. Open

promotions, among other aspects of his employment record.  Dkt. No. 57 (Declaration of John W.

Egan) ("Egan Decl."), Ex. J at JPMC 461.  Human Resources determined that Messinger's

employment should be terminated based upon its review of GSI's findings.  Harman Decl., Ex. N

(Muia Deposition Transcript) ("Muia Dep.") at 42-45, 123.[5]  On the same day, Craig sent Rothman a

---

[4] According to Mann, during their interviews, Cohen, Rose, and Stone each stated that Rothman had informed them of the rule that Chase employees and their family members were ineligible for the U.S. Open promotion.  Mann Decl., Ex. 1.  Resolving any ambiguities in Messinger's favor, however, the probative value of this statement is limited, since there is no indication as to when Rothman allegedly relayed this information (*i.e.*, before or after he was informed on July 12, 2012, that Messinger had enrolled in the U.S. Open promotion).  Moreover, Messinger denies that Rothman ever informed him of the rule at issue.  Messinger Aff. at ¶ 25.

[5] Although Messinger denies this assertion in his Rule 56.1 Counterstatement of Material Facts, the evidence that he cites in support has no bearing on whether Human Resources determined that Messinger's employment should be terminated.  *See* Dkt. No. 68 at 12, Response No. 44 (citing Harman Decl., Ex. I).  In particular, Messinger cites emails dated July 12, 2012, and July 13, 2012, in which Rothman requests that a Human Resources representative contact him

blank "Recommendation for Termination" ("RFT") form and requested that he complete and return it.  Rothman Decl., Ex. 6.  In the completed form, Rothman recommended Messinger's termination for the following reasons:

> I am recommending that Benjamin Messinger be terminated from employment because of an E-Coupon violation/ misconduct.
>
> On June 1, 2012 [Messinger] took advantage of the US Open E-coupon promotion with two of his own accounts when he knew he was not eligible for the coupon as a JPMC Employee.  [Messinger] asked a Business Banker who was not familiar with the US Open promotion to enter the coupons for him.
>
> On 5/24/2012, all of the Personal Bankers including [Messinger] were provided with documentation that gives the details of the promotion and clearly indicates that employees are not eligible to participate.  The promotion also states the maximum number of tickets per household is (2).  [Messinger] used one account for which he is the primary accountholder and a second account where his wife is the primary accountholder so that he could obtain (4) US Open tickets.
>
> On July 26, 2012 [Messinger] admitted in his statement to Global Security that he asked a Business Banker to enter the coupon for him and he also stated that he participated in the same promotion 1-2 years before.

Rothman Decl., Ex. 7.

The RFT drafted by Rothman was subsequently approved by Muia, Market Manager Andrew Simone, and aligned Human Resources Business Partner Nancy Panetta.  Rothman Decl., Ex. 8.  After signing the final RFT, Rothman and Muia terminated Messinger on July 31, 2015. Messinger Dep. at 292-93.

As punishment for enrolling Messinger and his spouse in the 2012 U.S. Open promotion, Lefkowitz was issued a written warning.  Harman Decl., Ex. H.  Lefkowitz's written warning also described a separate incident in which he erroneously transferred funds into an account based on a fraudulent email.  *Id.*  As a Business Banker, Lefkowitz did not report to Rothman.  Rothman Dep.

---

for unspecified reasons.  *See* Harman Decl., Ex I.  (Presumably, Rothman was attempting to relay Carlucci's finding that Messinger had engaged in misconduct by enrolling in the U.S. Open promotion in violation of its eligibility rules.  *See* Carlucci Decl. at ¶ 13).

at 172.  Personal Banker Dovid Cohen was not disciplined for enrolling Messinger and his spouse in the 2011 U.S. Open promotion.  *Id.* at 160-61.

## II.     Analysis

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "[c]onclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  Similarly, "[v]ague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion."  *Rodriguez v. Allstate Indem. Co.*, No. 12-cv-340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)).  Rather, "the non-movant must produce *specific facts* indicating that a genuine factual issue exists."  *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998) (emphasis added).

### B.     Age Discrimination Claims

Age discrimination claims under the NYSHRL are analyzed under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).  At the first step, the plaintiff must establish a *prima facie* case of discrimination by showing that (1) he was within the protected age group, (2) he was qualified for the position, (3) he suffered an adverse employment

action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of age discrimination. *Id.* at 107. If the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse action. *Id.* at 106. If such a reason is provided, the plaintiff must show that it was merely a pretext for age discrimination. *Isaac v. City of New York*, 701 F. Supp. 2d 477, 486 (S.D.N.Y. 2010).[6]

Here, the Court will simply assume, *arguendo*, that Messinger can establish a *prima facie* case of age discrimination. Chase has not challenged this conclusion in its motion and has articulated a legitimate reason for terminating Messinger's employment (the sole adverse employment action at issue in this case) for the reasons stated below, and evidence probative of a *prima facie* inference of discrimination is typically also probative of pretext. *See Idrees v. City of New York*, No. 04-cv-2197 (LAK), 2009 WL 142107, at *9 (S.D.N.Y. Jan. 21, 2009) (citing cases for the proposition that, "[d]espite the elaborate process set up in *McDonnell Douglas,* Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a *prima facie* case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action").

---

[6] With respect to both federal age discrimination claims under the Age Discrimination in Employment Act and federal retaliation claims under Title VII, the Supreme Court has clarified that the plaintiff's ultimate burden is to demonstrate that discrimination or retaliation was a "but-for" cause of an adverse employment action, and not just a "motivating factor." *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (ADEA claims); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (Title VII retaliation claims). District courts that have considered this issue have uniformly extended these holdings to state law state law discrimination and retaliation claims under the NYSHRL. *See, e.g., Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) ("Since the NYSHRL statutory language is the same, and the New York Court of Appeals has consistently stated that federal Title VII standards are applied in interpreting the NYSHRL, this Court will continue to interpret the standard for retaliation under the NYSHRL in a manner consistent with Title VII jurisprudence, as clarified by the Supreme Court in *Nassar.*"); *Najjar v. Mirecki*, No. 11-cv-5138 (KBF), 2013 WL 3306777, at *7 (S.D.N.Y. July 2, 2013) ("For the ADEA and NYSHRL age discrimination claims, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), makes clear that in order to withstand summary judgment, plaintiff must raise a triable issue that age was the 'but for' reason for the adverse employment action."). The Second Circuit has assumed, without holding, that the standard is the same. *See Gorzynski*, 596 F.3d at 106 n 6. As of yet, however, there is no controlling precedent to that effect. In this case, the Court's analysis compels the conclusion that Messinger cannot satisfy even the more lenient "motivating factor" standard with respect to both his age discrimination and retaliation claims. Therefore, Court need not opine on this issue in this case.

With respect to the second step of the analysis, Chase's stated reasons for terminating Messinger's employment were that he participated in the 2012 U.S. Open promotion in knowing violation of its eligibility rules, that he also participated in the 2011 U.S. Open promotion in violation of its eligibility rules, and that he exceeded the maximum ticket allowance of one or both promotions. *See* Rothman Decl., Ex. 7 (RFT). This alleged conduct violated both Chase's marketing promotion policies and Code of Conduct and thus provided a legitimate reason for Messinger's termination. *See* Rothman Decl., Ex. 2 at 3, Ex. 4 at JPMC, 244, 255, 261. This alleged conduct is also unrelated to Messinger's membership in a protected class. Chase has therefore articulated a legitimate, non-discriminatory reason for Messinger's termination.[7] Messinger appears to challenge this conclusion by arguing that there is no evidence that he knew that Chase employees were ineligible for the U.S. Open promotion. *See* Dkt. No. 67 ("Messinger Opp.") at 9-11. But such an argument goes to whether Chase's proffered legitimate, non-discriminatory reason for his termination was pretextual, and not to whether it has proffered such a reason in the first instance. *See, e.g., Garo v. Fed. Exp. Corp.*, No. 07-cv-3794 (CBA), 2010 WL 552339, at *9 (E.D.N.Y. Feb. 12, 2010) ("The relevant factors a court should consider in determining whether plaintiff's evidence, taken as a whole, sufficiently demonstrates pretext are: the strength of the plaintiff's prima facie case, the probative value of the proof that the employers explanation is false, and any other evidence that supports [or undermines] the employer's case." (internal quotation marks omitted)).

Turning to this issue now, Chase argues that the evidence does not permit a finding that its stated reasons for terminating Messinger were a pretext for age discrimination. *See* Dkt. No. 63 ("Chase Mot.") at 8-11. The Court agrees. As indicated, in attempting to satisfy his burden to

---

[7] Both parties focus on Messinger's purported knowing violation of the 2012 U.S. Open eligibility rules as the stated reason for Chase's termination decision, which the Court agrees was the principal rationale. But Chase has presented and reviewed evidence of all of the above alleged misconduct in its motion, including evidence that Messinger participated in the 2011 U.S. Open promotion in violation of its eligibility rules and exceeded the maximum ticket allowance of one or both promotions, and there is no indication that Chase's rationale for terminating Messinger has changed.

establish pretext, Messinger asserts that there is no evidence that he knew that employees were ineligible for the U.S. Open promotion. As a preliminary matter, however, Messinger's purported knowing violation of the eligibility rules of the 2012 U.S. Open promotion was just one of three forms of misconduct described in the RFT. *See* Rothman Decl., Ex. 7. Without mentioning whether he was aware of the applicable rules, the RFT also stated that Messinger had attempted to obtain four tickets to the U.S. Open for his household, instead of the maximum two, and that he had participated in the 2011 U.S. Open promotion. *Id.* Messinger has admitted to engaging in this misconduct, which indisputably violated the eligibility rules of the promotions, Chase's marketing promotion policies, and/or Chase's Code of Conduct.

More importantly, the relevant question is not whether Messinger knew that employees were ineligible for the promotion, but whether Chase honestly believed that he knew that employees were ineligible for the promotion. *See, e.g., Shah v. Eclipsys Corp.*, No. 08-cv-2528 (JFB), 2010 WL 2710618, at *10 (E.D.N.Y. July 7, 2010) ("To be a valid legitimate, nondiscriminatory reason for termination, an employer's belief need not be correct, only honestly held."); *Peterson v. Connecticut Light & Power Co.*, No. 3:10-cv-02032 JAM, 2014 WL 7156648, at *6 (D. Conn. Dec. 15, 2014) ("[A]n employer's good faith belief that an employee engaged in misconduct is a legitimate reason for terminating her, and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." (emphasis and internal quotation marks omitted)). And apart from his own self-serving statements that he was unaware of the eligibility rules, Messinger has identified no evidence that would impugn the good faith nature of Chase's assertion as to his knowledge. This assertion is supported by more than sufficient evidence in the record, including the undisputed facts that the rules are clearly stated in promotional documents that were distributed to branch employees, *see* Carlucci Decl. at ¶ 6, Exs. A-B., and that Messinger asked a Business Banker, who was unfamiliar with the rules of consumer promotions, to enroll him and his wife in the 2012 U.S. Open

promotion, *see* Mann Decl., Ex. 1.  On this record, no reasonable juror could find that Chase's assertion that Messinger knowingly violated the promotion's eligibility rules was not made in good faith.  *See Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980) (indicating that, in order to show pretext, a plaintiff must demonstrate that the employer's explanation for the adverse employment action "was so ridden with error that defendant could not honestly have relied upon it"); *accord Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) ("Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual.").

In any event, "a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).  In attempting to show that his termination was discriminatory, Messinger principally relies on evidence purportedly demonstrating that Rothman treated him less favorably than similarly situated younger employees.  *See* Messinger Opp. at 11-14; *Clark v. Jewish Childcare Ass'n, Inc.*, ---F. Supp. 3d---, No. 12-cv-9372 (KMK), 2015 WL 1452134, at *13 (S.D.N.Y. Mar. 31, 2015) ("A plaintiff may show pretext by demonstrating that similarly situated employees outside the protected class were treated differently." (internal quotation marks omitted)).  The majority of this evidence, however, is made up of Messinger's own vague, conclusory, and speculative statements that he was treated unfavorably.  *See, e.g.,* Messinger Aff. at ¶ 12 ("In addition to granting younger Personal Bankers PVC's that rightfully belonged to me, Mr. Rothman ignored their lateness and other violations of company policy, frequently gave them valuable referrals, and kept them advised of scheduled events about which he did not inform me."); *accord id.* at ¶¶ 13-16.  Such statements are insufficient to defeat summary judgment.  *See Kerzer*, 156 F.3d at 400; *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  Instead, the non-movant must produce

*specific facts* indicating that a genuine factual issue exists." (citations and internal quotation marks omitted) (emphasis added)).

The sole *specific* comparator evidence identified by Messinger is evidence demonstrating that Lefkowitz was issued a written warning for, among other things, enrolling Messinger and his spouse in the 2012 U.S. Open promotion, and that Cohen was not disciplined for enrolling Messinger and his spouse in the 2011 U.S. Open promotion. *See* Harman Decl., Ex. H; Rothman Dep. at 160-61; Messinger Opp. at 13-14. But Lefkowitz was not supervised by Rothman, *see* Rothman Dep. at 172, which weighs against finding that that he and Messinger are similarly situated, *see Akinyemi v. Chertoff*, No. 07-cv-4048 (AJP), 2008 WL 1849002, at *5 (S.D.N.Y. Apr. 25, 2008) ("Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated."). More significantly, the Court agrees with Chase that Messinger's misconduct was qualitatively different than the misconduct of Lefkowitz and Cohen. *See* Dkt. No. 71 (Chase Reply) at 7. By enrolling in consumer promotions for which he was ineligible, Messinger violated the prohibitions in Chase's Code of Conduct against self-dealing and misappropriation of firm assets for personal use (regardless of whether he did so knowingly). *See* Rothman Decl., Ex. 4 at JPMC 255, JPMC 261. By contrast, Lefkowitz's and Cohen's facilitation of Messinger's enrollment did not implicate these concerns. As a result, the differential treatment at issue does not give rise to an inference of discrimination or pretext. *See Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 466 (S.D.N.Y. 2006) ("Where co-employees are disciplined differently for conduct that is fundamentally different in quality, there is no 'objectively identifiable basis for comparison' to allow a finding that they are similarly situated." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Finally, Messinger relies on evidence purportedly demonstrating that Rothman played a significant role in the decision to terminate his employment. *See* Messinger Opp. at 12. It follows

12

from the above analysis, however, that the nature of Rothman's role in the termination decision is immaterial, as the evidence does not permit a finding that he harbored a discriminatory bias.

In any event, even if the evidence permitted such a finding, Chase would still be entitled to summary judgment. The Second Circuit has suggested that, in order for an individual's impermissible bias to "taint" an adverse employment decision, that individual must "play[ ] a meaningful role in the [decisional] process." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999); *see also Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys.*, 862 F. Supp. 2d 127, 150 (D. Conn. 2012) ("[T]he impermissible bias of a single individual can infect the entire group of collective decision makers . . . *at least when the decision makers are overly deferential to the biased individuals' recommendations . . . .*" (internal quotation marks omitted) (emphasis added)). Similarly, in assessing a statute prohibiting discrimination on the basis of an employee's membership in the military, the Supreme Court has indicated that an employer can be held liable for the conduct of a biased supervisor only if the ultimate decision maker "relies on facts provided by the biased supervisor" in deciding to take an adverse employment action. *Staub v. Proctor Hospital*, 562 U.S. 411, 421 (2011); *see also Rajaravivarma*, 862 F. Supp. 2d at 149-50 (applying *Staub* to employment discrimination claims under Title VII); *cf. Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1295 (10th Cir. 2013) (concluding that, under *Staub*, "an employer is not liable under a subordinate bias theory if the employer did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse employment action—even if the biased subordinate first alerted the employer to the plaintiff's misconduct").

Here, the following facts are undisputed. Carlucci, a Marketing Senior Manager, made the initial determination that Messinger had enrolled in the 2012 U.S. Open promotion in violation of its eligibility rules and ticket allowance. *See* Carlucci Decl. at ¶¶ 10-11. Carlucci notified Rothman of this misconduct, who then notified Human Resources and GSI. *Id.* ¶ 13; Rothman Decl., Ex. 5.

GSI conducted an investigation in which it determined, based on its review of bank records and interviews with employees, that Messinger had enrolled in both the 2011 and 2012 U.S. Open promotions in violation of their eligibility rules and ticket allowances. *See* Mann Decl., Ex. 1. Though not explicitly stated, GSI's findings at the very least implied that Messinger was aware of the eligibility rules. *See id.* Based on its review of GSI's findings, Human Resources determined that Messinger's employment should be terminated and requested that Rothman draft an RFT. Muia Dep. at 42-45, 123; Rothman Decl., Ex. 6. Rothman drafted an RFT consisting of facts that had been provided by Carlucci or GSI or admitted by Messinger. Rothman Decl., Ex. 7; Mann Decl., Ex. 1; Carlucci Decl. ¶¶ 10-13. Finally, the RFT was approved by three other managers. Rothman Decl., Ex. 8.

In light of these undisputed facts, Rothman's role in the decision to terminate Messinger's employment cannot be characterized as meaningful, as it was essentially limited to relaying or summarizing facts provided to him by others. Under these circumstances, any impermissible bias on the part of Rothman cannot be imputed to Chase in determining whether Messinger's termination was discriminatory. *Cf. Staub*, 562 U.S. at 421. Accordingly, even if the record permitted a finding that Rothman was biased against older employees (which it does not), a reasonable juror could not conclude that Messinger's termination was discriminatory.

Chase's summary judgment motion is thus granted with respect to Messinger's age discrimination claims.

### C.    Retaliation Claims

Retaliation claims under the NYSHRL are also evaluated under the *McDonnell Douglas* burden-shifting framework. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843-44 (2d Cir. 2013). At the first step, the plaintiff must establish a *prima facie* case of retaliation by showing that (1) he participated in a protected activity, (2) the defendant was aware of the protected activity, (3) he

suffered an adverse employment action, and (4) there was causal connection between the protected activity and the adverse employment action. *Id.* at 844. After establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* at 845. If the defendant does so, the plaintiff must demonstrate that the defendant's explanation is a mere pretext for retaliation. *Id.*

Here, the Court will assume, *arguendo*, that Messinger can establish a *prima facie* case of retaliation, especially given relatively short amount of time that elapsed between the protected activity—Messinger's purported complaints of age discrimination to Rothman, Cox, and Muia in April and May of 2012—and Chase's decision to terminate Messinger's employment in July 2012. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." (internal quotation marks omitted)). The Court agrees with Chase, however, that it has articulated a legitimate, non-retaliatory reason for Messinger's termination—his violations of the rules of two U.S. Open promotions—and that Messinger cannot establish that this explanation was a pretext for retaliation. *See* Chase Mot. at 14-15.

In attempting to establish pretext, Messinger relies on the same evidence as the evidence that allegedly supports his age discrimination claim, as well as the temporal proximity between his purported discrimination complaints and termination. *See* Messinger Opp. at 16-19. But the evidence at issue is insufficient to demonstrate pretext for the reasons already described, and Messinger cannot carry his burden through temporal proximity alone. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Accordingly, the record does not permit a finding that Chase retaliated against Messinger for engaging in protected conduct, and Chase's summary judgment motion is granted with respect to Messinger's retaliation claims.

## III.     Conclusion

For the foregoing reasons, Chase's summary judgment motion is granted in its entirety and Messinger's claims are dismissed.  The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:  August 28, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge